IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   Plaintiff,

     v.                                                                                          No. 5:24-cr-00062-MIS

CEASAR ENRIQUE MENDOZA and
ROBERT EDWARD EMBLY, a.k.a
"EDDIE,"

   Defendants.

### ORDER ON JOHN DOE'S DRUG USE, PRIOR DRUG USE, MEDICAL RECORDS, AND CAUSE OF DEATH

**THIS MATTER** is before the Court on United States' Motion in Limine to Exclude Evidence of John Doe's Drug Usage or Cause of Death, ECF No. 131, and Defendant Embly's Sealed Motion in Limine to Admit Evidence of John Doe's Prior Drug Use and Overdose, ECF No. 139. Defendant Mendoza and Defendant Embly responded separately to the United States' Motion. ECF No. 148; ECF No. 151. The United States responded to Defendant Embly's Motion. ECF No. 143. Argument was heard at a pre-trial conference held on January 23, 2025.

Upon due consideration of the Parties' submissions, the record, testimony, and the relevant law, the Court will **GRANT** United States' request to exclude evidence and **DENY** Defendant Embly's request to admit evidence.

### I.    BACKGROUND

For the purposes of expediting this Order, the Court will assume the Parties' familiarity with the facts.

Defendant Embly noticed Dr. Clarissa Krinsky, the medical examiner ("ME") who performed John Doe's autopsy, as an expert in forensic pathology. *See* ECF No. 83 at 2; *see also*

1

ECF No. 119 (supplementing the initial expert notice with Dr. Krinky's CV). The expert notice did not include her report, details of her anticipated testimony, methodology, or opinion. *Id.* Nor did it have a signed statement from Dr. Krinsky. *Id.* Dr. Krinsky is proffered as a non-retained expert. *Id.* Defendant Embly includes the postmortem report as exhibit to his Motion to include the report and other documents. ECF No. 139-3. Defendants did not list any toxicology expert who could provide a retrograde analysis indicating what amount of methamphetamine was found in John Doe's system at the time of his encounter with Defendants, let alone provide opinion testimony on the level of John Doe's intoxication at the time of his encounter with Defendants.

## II.   STANDARD

Under Federal Rule of Evidence 403, even relevant evidence must be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See United States v. Cristerna-Gonzalez*, 962 F.3d 1253, 1266 (10th Cir. 2020).

Federal Rule of Evidence 404(b)(2) permits character evidence for non-propensity purposes in the form of other crimes, wrongs, or acts for purposes other than character such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *See United States v. Tony*, 948 F.3d 1259, 1261 (10th Cir. 2020). The Tenth Circuit applies a four-part test to determine admissibility of 404(b) character evidence:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*Cristerna-Gonzalez*, 962 F.3d at 1265 (citing *United States v. Smalls*, 752 F.3d 1227, 1237 (10th

Cir. 2014)); *see also Huddleston v. United States*, 485 U.S. 681, 691-92 (1988); *Tony*, 948 F.3d at 1261 ("But even if the proponent identifies a permissible purpose, the evidence may still be inadmissible on grounds of relevance, unfair prejudice, or necessity of expert testimony.").

### III.     DISCUSSION

#### A.  Motion to Exclude Evidence of John Doe's Drug Usage or Cause of Death

The United States seeks to preclude defendants from introducing evidence related to John Doe's cause of death or that he had methamphetamine in his system as irrelevant, unfairly prejudicial, would confuse the issue, mislead the jury, and waste time. ECF No. 131 at 1. The United States argues that it is not seeking the heightened penalty for when death results from the alleged violation; rather, it is seeking the heightened penalty for inflicting bodily injury. *Id.* at 8. Death is not an element of any charged crime and will not be used to prove bodily injury. *Id.* The United States states that it plans to present immediate injuries from tasing in the form of burn marks shown in photo evidence. *Id.* The United States argues that Doe's cause of death or toxicology results when he died are irrelevant to proving the charges because the alleged violation and bodily injury are not related to drug use and officers were not aware at the time they applied force that Doe had methamphetamine in his system. *Id.* at 8-9 (citing Tenth Cir. Crim. Pattern Jury Instructions 2.17; *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.")).

The United States also argues that even if relevant, its minimal probative value is outweighed by unfair prejudice, confusing the issues, misleading the jury, and wasting time. *Id.* at 10. Presenting expert testimony on this topic would create a 'sideshow about an issue (cause of death) that is irrelevant to any fact of consequence in this action." *Id.* Such evidence also runs a

serious risk of confusing the issues and misleading the jury given that the evidence is not probative of any charged element. *Id.* Additionally, it could mislead the jury because the information implies that officers had knowledge of Doe's drug usage at the time they used force. *Id.* at 9. The United States also adds that admission that Doe had methamphetamine in his system could prejudice the jury by giving the impression that he was a bad person that deserved what happened to him. *Id.* at 11. Further, presenting such evidence with experts would waste the Court's time. *Id.*

  Defendant Mendoza responds that Doe's drug use and cause of death are relevant to show an alternative reason he would not comply with the officers' commands. ECF No. 148 at 2. Mendoza asserts that the officers on scene "noticed Doe was sweating profusely and was fidgety" when they arrested him for "what they reasonably suspected was presenting a false identification" and "at one point [Doe] tried grabbing Officer Embly's gun and gear." *Id.* Mendoza argues that evidence of Doe's drug use and cause of death are "relevant under the theory that his being Tazed created a serious medical need because such evidence is an alternate source of the government's claimed serious medical need." *Id.* at 3. Mendoza adds that if the United States attempts to argue that after being tased Doe could not comply due to confusion, it is relevant to present that he may not have complied because of drug use. *Id.* Mendoza also argues that evidence of Doe's drug use and cause of death are "highly relevant because the defendants' assertions he was driving erratically, acting or appeared 'off' or otherwise acting erratically, and resisted them is clearly made more probable by evidence he was on drugs at the time." *Id.* at 5.

  Defendant Embly responds that evidence of Doe's drug use and cause of death are intrinsic to the case because "John Doe's ongoing meth use is relevant to assessing how much strength he was likely employing in his resistance efforts (which cannot be determined from a video), and, thus, how much force was reasonable to counter them; and . . . John Doe's contemporaneous drug

use is relevant to assessing his competence, capacity, and credibility as a witness (or, more accurately, a declarant)." ECF No. 151 at 1-2 (citing Def. Embly's Response to the United States' Obj. to Expert Witness, ECF No. 111 at 8). Embly argues that evidence that Doe's "meth intoxication [was] so high that he killed himself from it" is directly relevant because it serves as a "commonsense proxy for just how high on meth he was." *Id.* at 3-4. He adds that to exclude it would be prejudicial to defendants and if Doe's cause of death is excluded, the fact that he died should also be excluded. *Id.* at 4.

Alternatively, Embly argues that the evidence should be allowed as 404(b) character evidence to explain "why [Doe] was acting strangely, why he was uncooperative with police (because he knew he was committing multiple serious crimes), and *that* he was using a high degree of force with the officers that cannot necessarily be seen on the lapel-cam videos (a viewer can tell that he is resisting, but cannot feel how strongly he pushing [sic] against the officers)." *Id.* at 2 (citing *Tony*, 948 F.3d at 1261). Embly argues that character evidence put on by the defense "is subject to a significantly lower bar for admission in the Tenth Circuit." *Id.* at 2 (citing *United States v. Montelongo*, 420 F.3d 1169, 1174-75 (10th Cir. 2005)).

First the Court will address the admissibility of the presence of methamphetamine in John Doe's blood at time of death, then the Court will address the admissibility of John Doe's cause of death.

### 1. Evidence of John Doe's Present Drug Usage

The United States seeks to exclude evidence that methamphetamine was present in John Doe's blood at the time of his death, ECF No. 131 at 8, and the Court finds that any probative value the evidence may have is substantially outweighed by the risk of prejudice, confusing the issues, and misleading the jury.

Defendants heavily rely on *Tony*, which is distinguishable based on the facts and analysis. *See Tony*, 948 F.3d at 1263 ("The district court had discretion to credit these arguments, but the court also had discretion to reject them."). In *Tony*, two private citizens engaged in a physical altercation that led to the death of one and murder charges for the other. *United States v. Tony*, No. 16-CR-2904-MV, 2018 WL 501561, at *3 (D.N.M. Jan. 19, 2018). The actual homicide that involved approximately 23 stab wounds and beating with a rock had no eyewitness testimony beyond the defendant's statement of events. *Id.* Defendant sought to introduce the victim's methamphetamine intoxication as character evidence to support a self-defense defense. *Id.* Here, substantial video evidence exists from multiple angles and viewpoints, providing the jury with enough information to determine whether Doe failed to comply with the officers' commands or if his actions were erratic—which makes any reason why Doe behaved in a certain way less probative. Further, while the jury is the ultimate decider of how they interpret the video recordings of the events, the Court is not convinced that Mr. Doe was acting erratically. The lapel camera footage shows several different angles of Mr. Doe talking to officers for approximately twenty minutes while standing outside of his vehicle, wearing what appears to be work coveralls in July. This comports with Mr. Doe's explanation that he was working in the nearby oil fields and goes a long way to explaining why he would be sweating and confused. He does not show obvious signs of aggressive behavior that could be associated with common assumptions about methamphetamine use. Officers were able to place Doe in handcuffs without incident and walk him to a police vehicle. Defendants' claims of resistance that necessitated use of force appear to be associated with the challenges of getting Mr. Doe in the vehicle, some thirty minutes after officers initiated interaction with Doe. Taken together, the jury has plenty of evidence before it, in the form of video recordings (and possibly witness testimony), to determine how much force was

necessary in the situation, making whether Doe had drugs in his system at the time less probative to determining whether excessive force was used.

While the information has little probative value, it has a high risk of luring the jury into making assumptions about Doe that could form an improper basis for their decision, such as implying that Doe was a bad person that deserved what happened to him or improperly implying what officers knew at the time they used force. *See United States v. Boutte*, 2024 WL 3665536, at *4 (10th Cir. Aug. 6, 2024) ("Unfair prejudice in the Rule 403 context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.") (quotation marks omitted).

Introducing the evidence creates a high risk of confusing the issues and misleading the jury, in part because Doe's alleged intoxication is not related to any of Defendants' charged conduct, and in part because the Court is still not convinced the evidence could overcome foundational or hearsay issues. As discussed below, the toxicology results within the Medical Examiner's postmortem report do not on their own indicate Doe's intoxication and related behavior at the time of the encounter. Aside from foundational issues and hearsay that the results would need to overcome to be admitted, an expert witness would also need to interpret those results.[1] Additionally, the jury must determine the knowledge of Defendants at the time of the encounter based on what the Defendants knew at the time, *Graham v. Connor*, 490 U.S. 386, 396

---

[1] At the pre-trial conference, Defendant argued that the confrontation clause is not at issue since the Defendant is presenting the evidence. However, there is still the issue of reliability underpinning any hearsay and foundational issues with the introduction of evidence. Defendant also pointed to the Tenth Circuit's analysis on whether the jury can make their own determination of a person's behavior while on methamphetamine and the necessity of expert testimony. *See Tony*, 948 F.3d at 1263-64. While the Court could spend further time distinguishing between the facts of *Tony* and the facts here, no expert is proffered to lay foundation and give opinion on the toxicology results. While a jury may be able to infer a person's intoxication based on behavior, and the Court is not convinced that is the proposition that *Tony* stands for, providing the results of a scientific report that is extrinsic evidence without explanation would only confuse or mislead the jury.

(1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."), and Doe was not arrested for any drug-related offense. Presenting this information would require jurors to essentially have a mini-trial on information that has little probative value.

Regarding the necessity of attacking Doe's credibility as a declarant, ECF No. 151 at 1-2, Defendant Embly has not indicated what statements made by Doe are being presented for the truth of the matter asserted, nor has he cited authority to support his claim. While Defendant Embly calls this information intrinsic to the case, he appears to be arguing for the inclusion of John Doe's possible intoxication as extrinsic evidence under Federal Rule of Evidence 608(b) to attack the credibility of a declarant. *See United States v. Little*, No. CR 08-0244 SBA, 2012 WL 25637963, at *3 (N.D. Cal. June 28, 2012). Because Defendant has not indicated what statements are being offered for the truth of the matter asserted that warrant impeachment, the Court need not make a determination of Rule 608(b). Further, using methamphetamine is not dishonest and does not go to a declarant's credibility. Should facts presented at trial make this argument relevant, Defendant may approach the bench and raise this with the Court at that time.

While there may be some probative value of Doe's toxicology results, for the purpose of determining how much strength or resistance Doe is exerting while officers place him in the back of the police vehicle, that probative value is minimized by the other evidence available to make that determination, namely video recordings (and possibly witnesses testimony), and the reliability of the evidence. For instance, Doe may have swallowed the intoxicant upon seeing officers approach, and without a forensic toxicologist we do not know when Doe last used methamphetamine. Further, the danger of unfair prejudice, confusing the issues, and misleading the jury resulting from this information substantially outweighs its probative value.

Finally, the Court finds that Doe's toxicology results are not admissible as character evidence under Federal Rule of Evidence 404(b). In *Tony*, the Tenth Circuit made clear that the bar for excluding character evidence under 404(b) is lowered when the defendant is the proponent of such evidence. *Tony*, 948 F.3d at 1261; *see also Montelongo*, 420 F.3d at 1174-75. To invoke this exception, the defendant merely needs to present a proper purpose for the inclusion of such evidence. *Id.* However, a 404(b) analysis still applies, and "the evidence may still be inadmissible on grounds of relevance, unfair prejudice or necessity of expert testimony." *Id.*

Defendant Embly objects to the exclusion of evidence of Doe's intoxication on the grounds that it is admissible character evidence, *see* ECF No. 151 at 2, which the Court interprets as Embly being a proponent for the inclusion of the same evidence as extrinsic to the case, *see Tony*, 948 F.3d at 1261. The Court finds that Embly provides a proper purpose to support the evidence's inclusion. *See* ECF No. 151 at 2 (relating the evidence to assist in determining Doe's uncooperating with police commands and use of force necessary for compliance). Having found that Embly provided a proper purpose, the Court's admissibility analysis still hinges on whether the evidence is relevant and its probative value substantially outweighs unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See Cristerna-Gonzalez*, 962 F.3d at 1265. The Court's preceding analysis has not changed—the danger of unfair prejudice, confusing the issues, and misleading the jury resulting from this information substantially outweighs its probative value.

For these reasons, the Court finds that evidence of Doe's drug usage prior to the encounter has little relevance to the facts at issue, and any probative value is substantially outweighed by a risk of unfair prejudice, confusing the issues, and misleading the jury. John Doe's alleged intoxication may not be admitted as evidence unless facts presented at trial change the Court's

weighing of factors. In which case, parties shall make any related motions or objections at bench.

### 2. Evidence of John Doe's Cause of Death

The Medical Examiner ("ME") concluded that John Doe's cause of death was "toxic effects of methamphetamine[.]" ECF No. 139-3 at 1. The postmortem toxicology reported .0022 mg/ml of methamphetamine as an intoxicant and .00013 mg/mL of amphetamine as a metabolite in John Doe's blood.[2] *See id.* at 2. As an initial matter, death is not an element of any of the charged crimes and is not relevant to the United States' case in chief, making Doe's cause of death relevant only if it is somehow material to a defense. Defendant Embly's argument that John Doe's cause of death serves as a proxy for how intoxicated he was at the time of his arrest is unavailing for several reasons.

First, death by methamphetamine overdose can either be acute, due to taking a large quantity in a short time period, or chronic due to the cumulative effects of long-term use. *See United States v. Huertero*, 20 Cr. 580 (ER), 2022 WL 2712877, at *5 (July 13, 2022); National Institutes of Health, National Library of Medicine, Medline Plus Medical Encyclopedia - Methamphetamine Overdose, https://medlineplus.gov/ency/article/007480.htm (last visited Jan. 27, 2025); Robert W. Harding et al., *"It's called overamping": experience of overdose among people who use methamphetamine*, HARM REDUCTION JOURNAL 19, article no. 4 (Jan. 16, 2022), https://harmreductionjournal.biomedcentral.com/articles/10.1186/s12954-022-00588-7. The ME's report indicates that she concluded the cause of death to be methamphetamine overdose because "it is unlikely that the electronic shocking was related to his death" because "footage clearly shows that he was alive for over 10 minutes after being placed alone in the police vehicle."

---

[2] These numbers are meaningless without interpretation and are outside the average juror's knowledge.

ECF No. 139-3 at 3. The report does not indicate what footage the ME relied upon to reach this conclusion, and as the parties' exhibit lists show, there is hours of video recordings that the ME could rely upon. Additionally, nothing in the ME's report indicates whether this was an acute or chronic overdose. *Cf. Huertero*, 2022 WL 2712877 at *5 (discussing the factors and ME's analysis in determining whether a person with multiple intoxicants present died of acute or chronic toxicity); *United States v. Zolot*, 968 F.Supp.2d 411, 424-26 (D. Mass. 2013). The toxicity could be acute or chronic, meaning no conclusion can be drawn that Doe was "driving around town high as a kite[,]" ECF No. 111 at 9, based on the ME's finding that he likely died of methamphetamine toxicity.³

Second, even if the toxicity was due to acute toxicity, nothing in the report indicates when Doe consumed the drug. He could have swallowed the drug when he saw that he was being pulled over. In that case, the drug would be in his system but would not necessarily have yet affected his behavior. Without more information outside of what is provided in the report, no conclusion can be made from Doe's cause of death and whether Doe's behavior or strength were affected by drugs at the time of his arrest.

For these reasons, John Doe's cause of death has little to no probative value.

Further, because the report and Doe's cause of death create many "what ifs" and raise more questions than they answer, the inclusion of Doe's cause of death would create a high risk of confusing the issue or misleading the jury. The ME can speak to the methodology and conclusions in her report related to John Doe's death, but Defendants have not indicated that she can speak to

---

³ The ME's report does not make clear what time period would lead to an alternative conclusion. Nor does the report clearly indicate how the time period was measured, leaving the Court to also question whether seeking earlier medical aid would have changed the ME's calculation and led to a different to conclusion.

how to interpret the level of methamphetamine found in Doe's blood and how to relate that to his behavior.[4] No retrograde analysis was provided within the ME's report or separately, and the ME simply reached the conclusion of overdose without noting whether it is due to acute or chronic toxicity. Nor have Defendants indicated any other witness who could speak to the results of the toxicology report and explain or interpret how the findings could relate to Doe's behavior at the time of his encounter with the officers.[5]

As Defendant Embly argues, inclusion of John Doe's death without relaying the cause could be prejudicial against defendants. ECF No. 151 at 4. However, any prejudice can be minimized by the inclusion of a limiting instruction that states that the jury cannot infer Defendants' guilt from the fact that John Doe later died. *United States v. Martinez*, 92 F.4th 1213, 1249 (10th Cir. 2024). The Court will submit such a limiting instruction, the specific wording to be determined after consideration of proposed instructions.

Therefore, the Court finds that even if Doe's cause of death were relevant—and the Court is not convinced that it is—the probative value of the cause of death is substantially outweighed by a danger of confusing the issues and misleading the jury. John Doe's cause of death may not be admitted as evidence unless facts presented at trial change the Court's weighing of factors. In which case, parties shall make any related motions or objections at bench.

---

[4] Additionally, Defendants' notice of the ME as an expert did not follow Federal Rule of Criminal Procedure 16(b)(C), *see* ECF No. 83; ECF No. 119, and any evidence aside from the ME's report would raise discovery issues under Rule 16(b). Even if her testimony is permissible given the lack of disclosure, the ME's status as a non-retained expert circumscribes what she is qualified to testify to, namely that information relied upon to form her opinion as presented in her report. *See United States v. Walker*, Case No. CR-24-096-RAW, 2024 WL 5111928, at *2 (E.D. Okla. Dec. 13, 2024). The report did not state anyone who can speak to toxicology, any results or analysis beyond the presence of methamphetamine in the blood, and what information supported the ME's determination that more than ten minutes lapsed between the encounter and John Doe's medical distress.

[5] The Court is also concerned with foundational issues of the toxicology report.

### B. Defendant Embly's Motion to Admit Evidence of John Doe's Prior Drug Use and Prior Medical Intervention

Defendant Embly seeks to introduce evidence of : (1) the FBI form that is a record of Special Agent De Los Santos' meeting with Doe's family, particularly the portion that states he has a history of drug use, had been hospitalized prior to that, and tried treatment at a facility in California, ECF No. 139-1; (2) portions of a transcript between a New Mexico State Police investigator and Doe's ex-wife where she describes his behavior when on methamphetamine as at times "vegetal almost" and states that he has had prior interactions with police, such as: "I know he's struggled a little bit with, with police um, and nothing to where he got charged with, with like resisting arrest or anything like that, so it wasn't that bad, so for them to charge him with anything like that. Um, but he would, you know, kind of I think he just, I don't, he's just not in his right mind when he's on that stuff. He's not, he's not . . . thinking correctly[,]" ECF No. 139-2; (3) the Medical Examiner's postmortem report which notes that Doe tested positive for "methamphetamine, and a metabolite amphetamine" and states that "[Doe] was acting strangely and not cooperating with law enforcement, which led to his being shocked numerous times with an electronic device[,]" ECF No. 139-3; (4) medical records for treatment Doe received on June 19, 2021, for stimulant abuse and intoxication where his mother reported he was "hyper" when she called EMS, EMS noted he was "combative" upon their arrival, and "[u]pon arrival to the hospital he was non-verbal and would only open eyes to sternal rub. He wouldn't follow commands but would localize to painful stimulus[,]" ECF No. 139-4 at 28; (5) a search warrant to search Doe's truck, issued after he was deceased, to look for his cell phone, illegal narcotics, and drug paraphernalia, and issued because "the possibility of drugs or paraphernalia may exist in the [truck][,]" ECF No. 139-5; and (6) a search warrant to search Doe's phone, issued August 16,

2021, for the purpose of "learn[ing] of all possible contributing factors to the death of [Doe] to include further investigation into any drug use or drug purchases by [Doe][,]" ECF No. 139-6. ECF No. 139 at 2-5.

Defendant Embly argues that John Doe's history of drug use and a prior medical treatment should be admitted based on relevance because the charged conduct includes the element of bodily injury which covers a range of injuries such as death and intermediate injuries that could be explained by his drug use. *Id.* at 5-7. Embly also appears to argue that the medical examiner's report is relevant to establish the force necessary to subdue him. *Id.* at 8-9 (citing *Saldino v. Walker*, 609 F.2d 1211, 1214 (7th Cir. 1979) ("The plaintiff's intoxication was introduced to show that his judgment was impaired when the incident occurred.")). And Embly also argues that "Mr. [Doe]'s intoxication is also relevant because it played a part in New Mexico State Police's investigation of the use of force." *Id.* at 9. He goes on to explain that the warrants were issued "because there was reason to believe the drugs or evidence of a crime would be found in a truck" and a "search [of Doe's] cell phone could help the investigators determine if [he] was at the Pilot parking lot because he was buying drugs, meeting someone, or otherwise engaging in drug-related activity. *Id.* Embly adds that the medical records can be allowed in as statements made for medical treatment under Federal Rule of Evidence 803(4). *Id.* at 10.

The United States responds by pointing to its arguments in its Motion to Exclude, ECF No. 131, and argues that evidence related to John Doe's death and drug use is not relevant because it is only arguing that Doe sustained bodily injury through the immediate injuries of burn marks from tasing. ECF No. 143 at 1, 8-9 (citing *United States v. Herrera*, 51 F.4th 1226, 1256 (10th Cir. 2022) (noting courts generally defer to government as to how to prove their case with the exception of stipulations involving a defendant's status as a convicted felon)). The United States

distinguishes *Saldino* because that was a civil case where the plaintiff's actions while intoxicated were material to the case, whereas this is a criminal case and the "reasonableness of the victim's actions are not for the jury to decide—rather the jury is tasked with determining the reasonableness only of the defendants' actions." *Id.* at 12. The United States adds that Doe's methamphetamine usage is not relevant simply because it may be a factor in a later investigation and the content of the search warrant is inadmissible hearsay. *Id.* Further, including the search warrants provide no probative value to the charged conduct, would confuse the jury, and only serves to tarnish Doe's reputation.[6] *Id.* at 13-14. The United States further argues that the medical records are inadmissible because Doe's habitual drug use is not relevant because there is "no clear connection" between past use and the facts of the case, and including the evidence would be highly prejudicial. *Id.* at 14-15. The United States lastly adds that evidence of John Doe's prior alleged "noncompliance or combative" behavior is improper character evidence and invalid propensity evidence. *Id.*

The Court has considered all parties' arguments and addresses each piece of evidence Embly seeks to introduce in turn.

First, the FBI report written by Special Agent David De Los Santos relates the meeting he had with Doe's family members. ECF No. 139-1. SA De Los Santos relays that one family member indicated that Doe had a history of drug use. *Id.* at 2. If Doe's intoxication is barely relevant to the instant case, as the Court previously found, the Court fails to see how a general statement confirming his past drug use is relevant to the crimes charged. Nor does Embly make much of an argument for the inclusion of this report as evidence. *See generally* ECF No. 139. Therefore, the Court finds that the FBI report has little to no probative value, any probative value it does have is

---

[6] The Court notes that during the January 23 pre-trial conference, the United States revealed that the search warrants produced no evidence of any of the allegations made in the warrants.

substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, wasting time, and needlessly presenting cumulative evidence.

Second, similarly, the transcript of the conversation between an NM State Police investigator and Doe's ex-wife has little to no probative value, and any probative value it does have is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, wasting time, and needlessly presenting cumulative evidence. Further, Embly has not addressed hearsay issues or made any argument for unavailability of a witness. The Court notes that Doe's ex-wife does not appear on any party's witness list at this time, but if she is called this transcript may be used for proper impeachment purposes.

Third, the Medical Examiner's postmortem report is inadmissible on the same grounds that John Doe's toxicology results and cause of death are inadmissible. If Doe's cause of death and the amount of methamphetamine in his blood are not being admitted into evidence, then the ME report has no relevance. Additionally, Embly specifically seeks to introduce the ME report's summary which is the ME's description of events leading up to Doe's death. This information is cumulative, provides non-medical conclusions, and Embly does not indicate how the statement overcomes both levels of hearsay. Therefore, the ME's postmortem report's probative value is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, and cumulative evidence.

Fourth, medical records for treatment Doe received on June 19, 2021, for stimulant abuse and intoxication are close in time to John Doe's encounter with officers on July 30, 2021. However, Defendant has not shown how these records are probative of Doe's actions on July 30. Nothing in the records indicates what amount of intoxication led to Doe's June 19 hospitalization nor what intoxication levels led to any behavior ascribed to him. The doctor in the report appears to rely on

statements made by Doe's mother.[7]

Fifth, the two search warrants issued after Doe's death—one to search Doe's truck for his cell phone, illegal narcotics, and drug paraphernalia and a later one to search Doe's phone—are not relevant to the instant charges. Embly's argument that these warrants are relevant to show that "there was reason to believe the drugs or evidence of a crime would be found in a truck[,]" ECF No. 139 at 9, is without merit. The fact that officers investigated Doe after his death to determine if possessed illegal items appears more like a fishing expedition to find evidence to support that they had probable cause to arrest him, and the argument that the warrants should be allowed in this case is circular. Embly does not explain how the warrants are relevant to the charges in this case, nor can he. For these reasons, the Court finds that the warrants are not relevant and provide no probative value, and even if there was a minimal probative value it would be substantially outweighed by a risk of unfair prejudice, confusing the issues, misleading the jury, and wasting time.

### IV.   CONCLUSION

For the foregoing reasons, the United States' Motion to Exclude is **GRANTED** and Defendant Embly's Motion to Include is **DENIED**.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

---

[7] The Court notes that Embly has not provided any foundational witnesses to introduce the evidence.